## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **KEVIN BALLANCE,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:21CV00187 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **J. O. HOLMAN, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| | ) | |
| Defendants. | ) | |

*Kevin Ballance, Pro Se Plaintiff; Ann-Marie White, Assistant Attorney General, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Defendants.*

One claim remains before the court in this prisoner civil rights action under 42 U.S.C. § 1983:

> Defendant C. A. Bryant, as directed by Defendant J. Woodson, denied Ballance a certain mailing from Typing and Inmate Services in July 2020 to prevent him from using materials in that mailing to oppose the summary judgment motion in the Eastern District [of Virginia] lawsuit, *Ballance v. Zook*, [No. 1:19CV330 (LMB/MSN)], in retaliation for that lawsuit and to interfere with Ballance's right to access the court.

*Ballance v. Holman*, No. 7:21CV00187, 2021 WL 4267521, at *3 (W.D. Va. Sept. 20, 2021).[1]   The matter is presently before me on the parties' cross motions for

---

[1]  Ballance filed this case in the United States District Court for the Eastern District of Virginia and later filed the Amended Complaint that is currently his operative pleading. Because his claims concern events that occurred within this judicial district, the case was transferred to this court on March 31, 2021.  In September 2021, I granted the defendants' Motion for Summary Judgment and dismissed the plaintiff's other § 1983 claims against

summary judgment.  After review of the record, I conclude that the defendants'

motion must be granted, and the plaintiff's motion must be denied.

## I. BACKGROUND.

An inmate in the custody of the Virginia Department of Corrections (VDOC),

"Ballance is currently serving multiple life sentences for several counts of forcible

sodomy, aggravated sexual battery, abduction, and taking indecent liberties with a

child." *Ballance v. Zook*, 1:19CV330 (LMB/MSN), No. 2021 WL 3130864 at *3,

(E.D. Va. July 23, 2021).  The events related to the claim that I am addressing here

(Claim One in the Amended Complaint as construed in my earlier Opinion) occurred

while Ballance was confined at Buckingham Correctional Center (Buckingham).

Ballance has allegedly been working for several years on a book manuscript that he

describes as a foreign film guide, a project that has been the subject of several

lawsuits he has filed.  He has obtained assistance from Phillip Wohlford, the owner

and operator of Typing and Inmate Services, to obtain photocopies and other

information related to the project.  *Ballance v. Holman*, 2021 WL 4267521 at *1.

Ballance states that in July 2020, he was preparing a response to a summary

judgment motion in the *Ballance v. Zook* lawsuit in the Eastern District of Virginia.

---

other defendants for failure to exhaust administrative remedies as required under 42
U.S.C. § 1997e(a).  After I referred the case to the magistrate judge for a bench trial on
remaining issues, Bryant and Woodson filed a Second Motion for Summary Judgment on
the merits.

On July 20, 2020, Wohlford of Typing and Inmate Services mailed Ballance an affidavit for that lawsuit with twenty-two pages of the foreign film guide manuscript attached to it.  Ballance alleges that

> C.A. Bryant denied Typing and Inmate Services business mail using [VDOC Operating Procedure] OP 803.1 Offender Correspondence stating the correspondence exceeds the maximum of three 8 X 11 photocopied pages, front and back.  [Bryant] also stated that the attached una[u]thorized publication/nudity is not permitted per OP 803.1
>
> Typing and Inmate Services is a licensed business and their mail comes under the policy [OP] 803.2 a vender.  The V[DOC] is well aware that Typing and Inmate Services is a business.

Am. Compl. 4, ECF No. 5.  Ballance filed a grievance asserting that "denial of the affidavit/publication violate[d] OP 803.2" and that the mailing should have been permitted under the nudity exception in OP 803.2(IV)(N)(2).  *See* Mem. Supp. Mot. Summ. J. Meinhard Aff., Enclosure B at 28, ECF No. 20-1.  This exception permits inmates to receive publications that include nudity for anthropological, educational, or medical purposes.  Ballance alleges that Warden J. Woodson's written Level I Response to his grievance "confirmed that [Woodson] told C.A. Bryant to deny the affidavit using OP 803.1."[2]  Am. Compl. 4, ECF No. 5.  Ballance asserts that these

---

[2]  Woodson's Level I Response to Ballance's grievance stated, in part:

According to your Unauthorized Mail Notification from Mrs. C.A. Bryant/Mailroom Supervisor, the correspondence exceeded the maximum of three 8 ½ X 11" photographed pages, front and back and the nudity was not permitted as well.

-3-

actions by Bryant and Woodson constituted retaliation against him for his pending lawsuit and interfered with his ability to prosecute that lawsuit, in violation of his right to access the court. Court records in *Ballance v Zook* indicate that a year after Bryant rejected the mailing that contained Wohlford's affidavit and attachments, the Eastern District court granted summary judgment for the defendants in *Ballance v. Zook* on July 23, 2021, noting that Ballance had never responded to the defendants' motion. 2021 WL 3130864, at *2.

In support of the defendants' Second Motion for Summary Judgment, they offer affidavits from Bryant and Woodson, a purported copy of the rejected mailing, and copies of VDOC mail procedures. Mem. Supp. Mot. Summ. J. Bryant Aff., ECF No. 83-1. Except as noted, Ballance does not dispute the accuracy of the defendants' information about applicable procedures and events.

As part of Bryant's position as the Institutional Operations Manager for Buckingham, she oversees the mailroom. She states that the mailing for Ballance

---

Per Operating Procedure 803.2/Incoming Publications/Page 2
Offenders at DOC institutions should be allowed to subscribe to, order, and receive publications direct from any vendor so long as the publication does not: Contain nudity or any sexually explicit acts, including child pornography or sexual acts in violation of state or federal law.

Meinhard Aff. Enclosure B at 27, ECF No. 20-1. Woodson ruled Ballance's grievance regarding the rejection of his mailing as unfounded, noting "Staff acted in accordance with policy and procedure." *Id.*

-4-

from Phillip Wohlford of Inmate and Typing Services arrived in the Buckingham mailroom around July 23, 2020, and was treated as general correspondence.

Under VDOC OP 803.1(III), general correspondence is "mail of a general nature sent or received from any addressee not meeting the definition of Legal Correspondence or Special Purpose Correspondence." *Id*. ¶ 4 and Enclosure A. Operating Procedure 803.1(III) defines Legal Correspondence as "[c]orrespondence sent to or received from verified attorneys, officers of state, federal, and local courts, the Virginia State Bar, and tort claims filed with the Division of Risk Management." *Id*. at Enclosure A. The sender must clearly identify a mailing's outer envelope and contents as legal correspondence for it to be treated as such in a prison mailroom. As defined by OP 803.1(III), Special Purpose Correspondence is correspondence sent to or received from VDOC administrators or health services, the Virginia Parole Board, federal and state executive offices, federal and state legislative offices, or city or county chief administrative offices. Inmate and Typing Services is not a VDOC service and is an independent business with no connection to the VDOC, so the mailing in question did not qualify as special purpose mail. Nor did Wohlford's mailing with a business return address qualify as legal mail under the procedure.

In accordance with OP 803.1(VI)(E), staff opened the mailing from Wohlford to Ballance and inspected it for contraband. This mailing contained a typed affidavit signed by Wohlford, along with several pages of photos of young boys, some

partially nude and some nude, that appeared to be still shots captured from movie

clips.[3]  Bryant Aff., Enclosure C, 29-43, ECF No. 83-1.  One page included a

photograph from a 1963 movie version of The Lord of the Flies that depicts a group

of young boys, nude and with their genitalia uncovered.[4]

Bryant states that Wohlford's mailing to Ballance violated OP

803.1(VI)(C)(9) for at least two reasons: (1) it contained more than the permitted of

five photographs and (2) it contained photographs of nude children.[5]  Bryant Aff. ¶

5.  Additionally, the mailing violated OP 803.1(VI)(E)(3) because the total pages of

the mailing exceeded the maximum number of pages permitted in general

correspondence.  This provision requires that for higher security level prisons (such

as Red Onion), all incoming general correspondence will be photocopied and must

fit on three 8.5 x 11 pages, front and back, including the envelope.  *Id.*  Exercising

her authority to oversee mailroom matters, Bryant disapproved Wohlford's mailing

to Ballance as incoming general correspondence.  Bryant states that Warden

---

[3] Ballance contends that the copy of the mailing submitted with Bryant's affidavit is missing every other page from the original.  *See* Mot. Summ. J. 3, ECF No. 92.

[4] In the copy of the Wohlford mailing filed with the summary judgment motion, this Lord of the Flies picture is redacted, but the original of that page was provided to the court and placed under seal.  Cover Letter Regarding Unredacted Exhibit C, ECF No. 87. I have reviewed this unredacted exhibit.

[5] Operating Procedure 803.1(VI)(C)(9) provides that an incoming mailing "may not contain more than five photographs (personal or commercially distributed)" and that "[n]ude or semi-nude personal photographs" of any person are prohibited.  OP 803.1(VI)(C)(9)(a), (b).

Woodson did not direct her to disapprove Ballance's mailing, and Woodson denies that he did so.  *Id.*; Mem. Supp. Mot. Summ. J. Woodson Aff. ¶ 6, ECF No. 83-2. The Warden states that he "delegate[s] responsibilities to designated staff as appropriate."  Woodson Aff. ¶ 7.

Ballance has asserted that Bryant should have permitted him to receive the attachments in Wohlford's mailing as an incoming publication under OP 803.2, since they came from a vendor, Typing and Inmate Services.  Bryant Aff. Enclosure D.  As stated, OP 803.2 allows inmates to receive incoming publications that include photographs depicting nudity for anthropological, educational, or medical purposes. OP 803.2(IV)(N)(2).   Operating Procedure 803.2(III) defines an incoming publication as "[a]ny communication such as newspapers, magazines, newsletters or other periodicals, books, brochures, catalogs, or pamphlets that can be subscribed to or ordered from a vendor."  OP 803.2(III).  In turn, the procedure defines a vendor as a "a publisher, organization, business or governmental agency that as a usual and regular business provides mail order service to the public."  *Id.*  Bryant contends that Wohlford's business and his mailing to Ballance did not meet these definitions.

But even if Inmate and Typing Services were considered a vendor and the mailing from Wohlford to Ballance qualified as an incoming publication, Bryant asserts that OP 803.2 still prohibits Ballance from receiving that mailing as an incoming publication.  Based on Ballance's criminal history, he is required to

register in the Sex Offender and Crimes against Minors Registry.  Bryant Aff. ¶ 6 n.3.  Operating Procedure 803.2(IV)(N)(3) bars inmates required to be registered in that Registry from receiving any publications containing depictions of nudity even if the nude photographs illustrate anthropological, educational, or medical content.

Bryant notes that under VDOC procedures, a "mailing is either authorized or unauthorized as a whole," meaning that staff will not provide the inmate with any separate parts of an incoming mailing that do not violate procedural limitations. Bryant Aff. ¶ 5.  On July 23, 2020, mailroom staff prepared a Notice of Unauthorized Correspondence, addressed to Wohlford and also sent to Ballance, stating two reasons why Bryant had disapproved the mailing under VDOC procedures — because it exceeded the three-page, front and back, limit and as an incoming publication, it included nudity and so was "unauthorized."  *Id.* at Enclosure B.

Bryant denies that she has ever retaliated against Ballance or any other inmate and denies that she has ever tried to hinder an inmate's ability to file or pursue a lawsuit.  She states that at the time she denied Ballance's incoming mailing from Wohlford in July 2020, she "was unaware of any litigation which [Ballance] had filed against any other VDOC employee."  Bryant Aff. ¶ 10.  She further states that even if she had "been aware of Ballance's litigation, [she] still would have denied the mail sent by Inmate and Typing Services because it is out of compliance with VDOC policies."  *Id.*  Warden Woodson states that he "ha[s] never retaliated against

Ballance or . . . interfered with Ballance's . . . access to the courts." Woodson Aff. ¶ 7.

## II.  DISCUSSION.

### A.  The Summary Judgment Standard.

The Federal Rules of Civil Procedure provide that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).[6]  "A fact is material if it might affect the outcome of the suit under the governing law." *Id.*  In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  *Id.* at 312-13. To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The defendants have filed affidavits and other documentation in support of their motion.  So, to avoid summary judgment, Ballance must present sufficient evidence that could carry the burden of proof of his claim at trial.  His submissions

---

[6]  I have omitted internal quotation marks, alterations, and citations throughout unless otherwise noted.

must "set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Anderson*, 477 U.S. at 248. "[C]ourts are obligated to liberally construe pro se complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017). And "it is well established that a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). "A complaint [or other document] is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" *Id.* at 495 n.2. Ballance's Amended Complaint satisfies these verification requirements, so therefore, I will consider it as an affidavit for summary judgment purposes. His self-titled "Motion for Summary Judgment," however, is not signed under penalty of perjury and does not include any sworn affidavit or declaration in support. Thus, I cannot address the motion as a proper summary judgment pleading, but I will consider it as Ballance's response to the defendants' motion.

## B.  Retaliation.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Prison officials may not retaliate against an inmate for exercising his constitutional right to access the court.

*Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).  On the other hand, "plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked allegations of reprisal," and mere conclusory assertions of a retaliatory motive without factual support are not sufficient to support a constitutional claim under 42 U.S.C. § 1983.  *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

To prevail on a retaliation claim under § 1983, a plaintiff must demonstrate three elements: "(1) that he engaged in protected First Amendment activity, (2) that the defendant took some action that adversely affected his First Amendment rights, and (3) that there was a causal relationship between his protected activity and the defendant's conduct."  *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (*Martin I*).  It is well-established that the filing of a lawsuit is protected conduct that satisfies the first element.  *Booker*, 855 F.3d at 541.

The second element may be satisfied if the plaintiff alleges facts showing that the defendant's action adversely affected his future exercise of his constitutional rights.  *Martin I*, 858 F.3d at 249.  To do so, the plaintiff must demonstrate that the defendants' alleged retaliatory conduct caused more than de minimis inconvenience and that it "would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

Third, the plaintiff must state facts showing a causal relationship between his protected activity and the defendant's conduct. *Martin I*, 858 F.3d at 249.

> In *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) ("*Martin II*"), the Fourth Circuit applied the burden-shifting standard from *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), to causation in inmates' retaliation claims. Concluding that the burden of showing causation is "best shared," the Fourth Circuit adopted *Mt. Healthy's* "same-decision test." *Martin II*, 977 F.3d at 299–300. The same-decision test proceeds in two steps. First, an inmate must show "that protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Id.* at 301. If the inmate does so, the burden shifts to the defendant to demonstrate by a preponderance of the evidence that he "would have reached the same decision . . . in the absence of the protected conduct," *id.* at 299 (quoting *Mt. Healthy*, 429 U.S. at 283).

*Mateen v. Collins*, No. 7:19CV00620, 2021 WL 4432517, at *3 (W.D. Va. Sept. 27, 2021). Thus, the plaintiff must state facts showing that his protected activity was a substantial, motivating factor in the defendant's decision to take the adverse action at issue. *Id.* Again, conclusory assertions that a defendant acted from a retaliatory motive will not suffice to make this showing. *Adams*, 40 F.3d at 74.[7]

---

[7] If the "plaintiff establishes [that] his protected conduct was a substantial or motivating factor in the defendant's decision to take adverse action, the defendant is appropriately tasked with explaining why h[is] decision was not animated by retaliatory motives." *Martin II*, 977 F.3d at 301. And if a defendant meets the burden to show a nonretaliatory motive, then the plaintiff again bears the burden of persuasion to contradict the defendant's evidence and prove that the defendant's reason is a pretext. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

It is undisputed that Ballance had a lawsuit against prison officials pending in July 2020, *Ballance v. Zook*, when Bryant reviewed the incoming mail from Wohlford to Ballance and rejected it under VDOC procedures. Thus, Ballance has met the first element of a retaliation claim — the exercise of his First Amendment right to file a lawsuit.

Ballance asserts that Bryant's rejection of the July 2020 mailing (Wohlford's affidavit and attached pages) adversely affected his First Amendment rights. But I cannot agree that Ballance has met this second element of the *Martin I* standard. Bryant rejected the July 2020 mailing because it violated VDOC procedures, and she returned the affidavit and attachments to Wohlford. Yet, the Eastern District Court did not dismiss Ballance's pending lawsuit, *Ballance v. Zook*, until a year later, in July 2021. Ballance does not explain why he could not have asked Wohlford to resend him all of the items he needed for his defense of that lawsuit (except the nude photo) by placing them in smaller mailings that complied with VDOC OP 803.1's page limitation. The mere inconvenience of being required to make several mailings instead of one is not sufficiently adverse to satisfy the second element under *Martin I*. *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993) (holding that vague and conclusory allegations about delays or inconveniences to inmate's legal work cannot support a denial of access claim). Nor has Ballance shown how one returned mailing

"would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500.

Even if Ballance could show how the rejection of his mail adversely affected his First Amendment rights, he has not satisfied the third element under *Martin I*, causation. At the most, Ballance offers his own conclusory assertions that Bryant and Woodson rejected his mailing to retaliate against him for the *Ballance v. Zook* lawsuit. He does not support these statements with any facts based on his personal knowledge, and so I need not consider them as true on summary judgment. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").

It is undisputed that in July 2020, Bryant was not aware Ballance had a lawsuit pending in the Eastern District against officials at a different VDOC prison. She also denies that Woodson asked her to reject Ballance's mailing under the general correspondence procedure, and Woodson denies asking her to do so. It is also undisputed that both defendants deny retaliating against Ballance in any way. Rather, both defendants state that the mailing received from Typing and Inmate Services in July 2020 was rejected because it violated incoming mail and publication procedures. It exceeded the page limit for general correspondence, and it contained

nudity.  Moreover, Ballance could not receive the attached pages as a publication from any vendor because they included nudity.  Ballance is required to register as a sex offender and thus cannot meet the exception in OP 803.2(IV)(N)(3) allowing other inmates to receive publications containing nudity in limited circumstances.

In short, Ballance has not presented any genuine issue of material fact on which he could persuade a fact finder that either Bryant or Woodson took any action regarding his mailing to retaliate against him for his pending lawsuit.  His retaliation claims against them thus fail under *Martin I*, and the defendants are entitled to summary judgment as a matter of law.   As to the retaliation aspect of his claim, I will grant the defendants' Motion for Summary Judgment and deny Ballance's cross motion for lack of evidence.

### C.  Access to Courts.

The constitutional right of access to the courts does not guarantee an inmate litigant the ability to access whatever legal material he believes are necessary to his litigation efforts.  *Lewis v. Casey*, 518 U.S. 343, 356 (1996).  To state an actionable claim for denial of access, the inmate must show that the challenged official procedure or action resulted in particularized harm to his litigation of a nonfrivolous claim.  *Id.* at 351–53.  Most importantly, the litigant must identify the nonfrivolous claim that was allegedly harmed by the defendants' actions.  *Christopher v. Harbury*, 536 U.S. 403, 413–16 (2002).

Ballance falls to present evidence to meet the requirements under *Casey* and *Christopher*. He does not identify a particular nonfrivolous claim that he was pursuing in *Ballance v. Zook* that the defendants adversely affected by their actions. Indeed, he does not explain what claim or defense he intended to pursue using Wohlford's affidavit and attachments or why these items were important to his litigation at all. Furthermore, as discussed, Ballance does not demonstrate that the rejection of the one mailing in July 2020 made the items returned to Wohlford unavailable for use in the lawsuit. With the exception of the picture containing nudity, Wohlford could have posted all of these items to Ballance in multiple, smaller mailings that complied with the general correspondence page limit. This mere inconvenience is not sufficient to meet the actual injury element of the *Casey* standard. So I conclude that Ballance has failed to present any genuine issue of material fact in dispute on which he could persuade a fact finder that the defendants' actions deprived him of his constitutional right to access the court, *Casey*, 518 U.S. at 351-53, and the defendants are entitled to summary judgment as a matter of law. As to the court access aspect of his claim, I will grant the defendants' Motion for Summary Judgment, and I will deny Ballance's cross motion for lack of evidence.

III.  Conclusion.

For the stated reasons, it is **ORDERED** that the defendants' Motion for Summary Judgment, ECF No. 82, is GRANTED, and the plaintiff's Motion for Summary Judgment, ECF No. 92, is DENIED.

A separate Judgment will enter herewith.

ENTER:   September 28, 2022

/s/  James P. Jones
Senior United States District Judge